**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN WILLIAMS,<br><br>      Plaintiff,<br><br> v.<br><br>THOMAS W. McGAVITT & FASTENAL CO.,<br><br>      Defendants. | Civil Action No.: 20-19960<br><br>**OPINION** |

**CECCHI, District Judge.**

**I. INTRODUCTION**

  This matter comes before the Court by way of (1) Defendant Fastenal Company's ("Fastenal") partial motion for summary judgment (ECF No. 65); (2) Defendant Thomas McGavitt's ("McGavitt") motion to dismiss Plaintiff Steven Williams' ("Plaintiff") amended complaint in part (ECF No. 66); and (3) Plaintiff's motion for partial summary judgment (ECF No. 67). The Court has considered the submissions made in support of and in opposition to the motions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Fastenal's motion for partial summary judgment (ECF No. 65) is **GRANTED IN PART** and **DENIED IN PART**; McGavitt's motion to dismiss (ECF No. 66) is **GRANTED**; and Plaintiff's motion for partial summary judgment (ECF No. 67) is **DENIED**.

## II.     BACKGROUND

### A.     Factual Background[1]

The instant dispute arises out of an automobile accident that occurred on November 13, 2019, at approximately 2:27 a.m.  FAC ¶¶ 7–10; FSMF ¶ 1.  Plaintiff was driving a vehicle eastbound in the express lanes of Interstate 78 in Hillside Township, New Jersey when McGavitt's vehicle, which he was operating in the course and scope of his employment with Fastenal, struck the rear of Plaintiff's vehicle.  FSMF ¶¶ 1–3.  The contact from McGavitt's vehicle pushed Plaintiff's vehicle across a curbed median into the highway's local lanes where the vehicle became disabled, and Plaintiff alleges he suffered physical, emotional, and financial injury as a result of the collision.  FAC ¶¶ 11, 17–19.

Plaintiff contends that at the time of the incident McGavitt was driving under the influence of unprescribed amphetamines (per the results of a drug test from the day of the accident), was speeding in a construction zone, and was momentarily distracted by his cell phone.  Pl. Opp. at 2.  Plaintiff adds that McGavitt subsequently pleaded guilty to "careless driving" under N.J. Rev. Stat. § 39:4-97 following the incident.[2]  *Id.*   Plaintiff notes that McGavitt had a history of disregarding Fastenal's corporate safety rules and the "rules of the

---

[1] Unless otherwise noted, all facts are drawn from Plaintiff's Amended Complaint ("FAC"), ECF No. 35, Fastenal's Statement of Material Facts ("FSMF"), ECF No. 65-2, Plaintiff's Response to Fastenal's Statement of Material Facts ("Pl. Resp. SMF"), ECF No. 71, and the relevant record. Although Plaintiff did not provide a "supplemental statement of disputed material facts" pursuant to Local Civil Rule 56.1 in response to Fastenal's motion for summary judgment, the Court will consider Plaintiff's supplemental facts proffered in her opposition brief, ECF No. 71-2 ("Pl. Opp."), to the extent they are supported by citations to the record.

[2] Amphetamines are stimulant drugs that speed up the body's function. *Amphetamines*, Cleveland Clinic, https://my.clevelandclinic.org/health/drugs/23039-amphetamines (last visited December 20, 2023).  Certain amphetamines are approved by the U.S. Food & Drug Administration to treat medical conditions including attention-deficit hyperactivity disorder ("ADHD") and narcolepsy.  *Id.*; ECF No. 66-5 at 4 ("Amphetamines are prescription stimulants used to treat [ADHD].")

2

road" while driving, as evidenced by Fastenal disciplinary records. *Id.* Fastenal did not file a reply brief addressing these contentions, while McGavitt asserts in his motion to dismiss, addressing the same contentions, that there is no evidence he was impaired, speeding, or located in an active construction zone. ECF No. 66-5 at 2–3. As to his driving history, McGavitt notes he was disciplined by Fastenal twice and has never had his license suspended. *Id.* at 3.

The parties agree that following the accident, Thomas White, Fastenal's Transportation Manager, reviewed video of the collision from the Fastenal vehicle's dashcam, spoke to McGavitt about the incident, and ultimately approved termination of McGavitt's employment. FSMF ¶¶ 11–14, 16; Pl. Resp. SMF ¶¶ 11–14, 16. Fastenal contends that McGavitt was terminated "because of the crash" (FSMF ¶ 15), while Plaintiff insists that "McGavitt's employment was [specifically] terminated because of his driving under the influence" of amphetamines at the time of the accident (Pl. Resp. SMF ¶ 15).

B. **Procedural Background**

Plaintiff filed his initial complaint against Fastenal and McGavitt on December 21, 2020. ECF No. 1. Plaintiff subsequently filed an amended complaint on December 1, 2021, alleging negligence (Count One), negligence per se (Count Two), negligent entrustment (Count Three), and punitive damages (Count Four). ECF No. 35. Fastenal filed an answer on January 10, 2022. ECF No. 41. McGavitt then answered on February 11, 2022. ECF No. 47. On November 23, 2022, Fastenal filed a motion for partial summary judgment as to Plaintiff's claims of negligent entrustment (Count Three) and punitive damages (Count Four) (ECF No. 65), and McGavitt filed a motion to dismiss Plaintiff's punitive damages claim (Count Four) (ECF No. 66).[3] The same

---

[3] The Court notes that McGavitt filed the instant motion to dismiss pursuant to Rule 12(b)(6) *after* he filed an answer. The Court, as it may do in its discretion, will consider McGavitt's

day, Plaintiff also filed a motion for partial summary judgment as to liability only. ECF No. 67.[4] Fastenal and McGavitt filed briefs in opposition to Plaintiff's summary judgment motion. ECF Nos. 68, 69. Plaintiff filed briefs in opposition to Fastenal's and McGavitt's motions. ECF Nos. 71, 72. No reply briefs were filed.

### III. LEGAL STANDARD

#### A. Rule 12(c)

"A motion under Rule 12(c) is decided under the same standards which apply on a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 737 (D.N.J. 2016) (citing *Turbe*, 938 F.2d at 428). Consequently, a motion for judgment on the pleadings "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and

---

motion as a motion for judgment on the pleadings pursuant to Rule 12(c). As another court in this District explained in *Dare v. Twp. of Hamilton*:
> A defendant may move to dismiss a complaint before or after filing an answer. Fed. R. Civ. P. 12(b)(6) and (c); *see also Borough of Sayreville v. Union Carbide Corp.*, 923 F. Supp. 671, 675–76 (D.N.J. 1996). A motion to dismiss made after an answer is filed is a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Fed. R. Civ.P. 12(h)(2). Here, Defendants' motion to dismiss Plaintiff's claims . . . was filed after the Answer and shall be construed as a motion for judgment on the pleadings pursuant to Rule 12(c). The differences between Rules 12(b)(6) and 12(c) are purely procedural. *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The pleading standards of Rule 12(b)(6) are applied for both. *Id.*

No. CIV. 13-1636 JBS/JS, 2013 WL 6080440, at *3 (D.N.J. Nov. 18, 2013); *see also Newton v. Greenwich Twp.*, No. 12-CV-238 RMB/KMW, 2012 WL 3715947, at *1 n.1 (D.N.J. Aug. 27, 2012) ("First, Plaintiffs contend that [Defendant]'s motion to dismiss was improper because 12(b)(6) motions must be made prior to any answer . . . . But this Court will exercise its discretion to construe those Defendants' post-answer motion as proper under F.R.C.P. 12(c)." (citation omitted)).

[4] Plaintiff's motion for partial summary judgment was refiled at ECF No. 78 to correct document processing errors. Therefore, subsequent citations to Plaintiff's motion are to ECF No. 78 where appropriate.

4

that he is entitled to a judgment as a matter of law." *See Rosenau v. Uniford Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).  The Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*

  **B.**  **Rule 56**

  Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

  The moving party has the initial burden of proving the absence of any genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).  In order to meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed[] the 'mere scintilla' threshold . . . .").  An issue is "genuine" if it is supported by evidence, such that a reasonable jury could return a verdict in the non-moving

5

party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV. DISCUSSION

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment as to Fastenal's and McGavitt's liability. ECF No. 78. Plaintiff's position is predicated on a joint status letter from counsel to Magistrate Judge Edward S. Kiel, filed on August 19, 2021, that briefly noted "[t]he Defendants have stipulated to liability."[5] ECF No. 27 at 1.[6] Defendants, however, argue that they are not bound by that stipulation because it preceded Plaintiff's filing of an amended complaint that re-asserted punitive damages claims that had been voluntarily dismissed prior to the stipulation. ECF No. 68 at 3; ECF No. 69 at 3; *see also* ECF No. 6 (notice of voluntary dismissal), ECF No. 33 (Judge

---

[5] To the extent Plaintiff seeks summary judgment as to liability based on the underlying facts, rather than solely based on the stipulation, he does not adequately outline those facts to support the motion. Plaintiff initially submitted a Local Rule 56.1 Statement with his motion for partial summary judgment. *See* ECF No. 67-11. Therein, Plaintiff identified the stipulation of liability as a material fact not in dispute along with three other facts that, in sum and substance, amount to the contention that McGavitt collided with Plaintiff's vehicle on I-78 while driving for Fastenal. *Id.* ¶¶ 1–3. Plaintiff then filed a subsequent, seemingly revised version of the Local Rule 56.1 Statement which identified the *only* fact being that Defendants stipulated to liability. ECF No. 70. Setting aside the procedural anomalies of Plaintiff's filings, the sparse set of facts falls far short of providing a sufficient substantive basis to grant summary judgment as to liability.

[6] The Court notes that defense counsel who signed and submitted the stipulation letter, Ms. Nancy Appel, who was jointly representing Fastenal and McGavitt, was terminated from the case in January 2022 and was replaced by Mr. William Staehle (for Fastenal) and Mr. Joseph Gaul (for McGavitt individually). *See* ECF No. 37.

Kiel's letter order permitting amended complaint).  To support their position, Defendants point to a warning to Plaintiff and Judge Kiel that they would need to withdraw the stipulation should Plaintiff file an amended complaint seeking punitive damages.  *See* ECF No. 33 at 5.  Fastenal's counsel subsequently reiterated this position to Plaintiff's counsel in a January 17, 2022 letter. *See* ECF No. 68-1.  Though Judge Kiel permitted Plaintiff to file the amended complaint, he appeared to contemplate the possibility of the scenario currently presented to the Court, explaining that "plaintiff [would] simply have to endure the resultant consequences of the decision to reassert the Punitive Damages Count," including potential withdrawal of the stipulation.  ECF No. 33 at 6.  The Court agrees.

As an initial matter, it would be "manifestly unjust" to bind Defendants to a stipulation entered into during discovery under a specific set of pending claims that have since changed as a result of Plaintiff's unilateral actions.  *See United States v. Lenegan*, 425 F. App'x 151, 154 (3d Cir. 2011) (identifying the occurrence of intervening events following the stipulation as a factor in determining whether a party may withdraw said stipulation).  Plaintiff, of course, had every right to pursue punitive damages through an amended complaint based on discovery revelations. However, as Judge Kiel warned, Plaintiff cannot now complain of the consequences (*i.e.*, having to prove liability) after selecting that path.

In any event, the scope of the parties' intended stipulation is unclear based on the record. Indeed, Plaintiff seeks judgment for "liability," but notes that "causation of injuries" will be decided by a jury (along with damages and punitive damages).  ECF No. 78 at 2.  Causation, however, is an element of a *prima facie* case of negligence.  *Townsend v. Pierre*, 221 N.J. 36, 51 (2015).  It is unclear how the Court can adjudicate Defendants as liable for negligence on summary judgment when causation is in dispute.  It is plausible that Plaintiff seeks judgment of

7

liability solely as to the duty and breach elements of negligence based on McGavitt's conduct. McGavitt does not appear to contest those elements, and Fastenal appears prepared to accept vicarious liability if McGavitt was indeed negligent. *See* ECF No. 69 at 3 (McGavitt noting that he "has no basis to oppose a motion for summary judgment on negligent driving" but "*does* contest causation" and "*does not* accept liability" for the punitive damages claim (emphasis in original)); ECF No. 68 at 4 (Fastenal conceding that it would be vicariously liable if McGavitt is found to have acted negligently). However, the Court will not enter summary judgment based on speculation as to the parties' intent. As such, the parties may revisit a stipulation as to these elements moving forward. Therefore, Plaintiff's motion for partial summary judgment as to liability is denied.

### B. Fastenal's Motion for Partial Summary Judgment

#### 1. Negligent Entrustment

Fastenal seeks summary judgment as to Plaintiff's negligent entrustment claim. ECF No. 65. In New Jersey, "'[t]he owner of an automobile may be liable for injury from the operation of that car placed in the hands of one he knows or ought reasonably to know is incompetent to operate it so that the owner ought reasonably to anticipate that in its operation injury will be done to others.'" *Bridges v. Morris*, No. CIV. 12-385 JS, 2014 WL 4656933, at *3 (D.N.J. Sept. 17, 2014) (quoting *Mead v. Wiley M.E. Church*, 4 N.J. 200, 206 (1950)). "There must be 'actual knowledge or reasonable cause to believe that the operator is unqualified or incompetent.'" *Id.* (quoting *Baran v. Clouse Trucking*, Inc., 225 N.J. Super. 230, 235 (App. Div. 1988)). "[T]he plaintiff generally must prove that: (1) the entrustee was incompetent, unfit, inexperienced, or reckless; (2) the entrustor knew ..., should have known or had reason to know of the entrustee's condition or proclivities; (3) there was an entrustment of the dangerous instrumentality; (4) the

entrustment created an appreciable risk of harm to others; and (5) the harm to the injury victim was 'proximately' or 'legally' caused by the negligence of the entrustor and the entrustee." *Quigley v. Arthur*, No. CIV.A. 10-4308 JLL, 2011 WL 5519839, at *2 (D.N.J. Nov. 10, 2011) (citations omitted).

Fastenal argues that it is entitled to partial summary judgment as to Plaintiff's negligent entrustment claim because the record fails to show McGavitt was "incompetent, unfit, inexperienced, or reckless" or that Fastenal knew, or had reason to know, of McGavitt's condition or proclivity. ECF No. 65-3 at 4. In support of its motion, Fastenal explains that McGavitt was hired "in the ordinary course of business after checking his credentials" and that it "exercised due care throughout the process and course of [McGavitt's] employment." *Id.*

Plaintiff, however, refutes Fastenal's contentions. Plaintiff cites the company's internal disciplinary records, which reveal McGavitt's multiple driving infractions, as evidence that Fastenal "knew that there was a particular unfitness with" McGavitt. Pl. Opp. at 11. Fastenal's records specifically show two "Verbal Discussion / Documentation" forms, from February and March 2017, identifying instances in which Fastenal's dashboard reporting system flagged McGavitt driving twelve miles-per-hour above the speed limit (ECF No. 71-11 at 3–4), a July 2018 "Disciplinary Action Sheet" noting McGavitt had failed to stop at a red light (*id.* at 7), and a November 2019 "Disciplinary Action Sheet," from the incident at the center of this litigation, noting McGavitt had a previous "at fault accident in the last 24 months" (*id.* at 8).

Considering McGavitt's driving record as a Fastenal employee, a genuine question of material fact exists to whether Fastenal "should have known or had reason to know" that McGavitt was "incompetent, unfit, inexperienced, or reckless" and that there was "an appreciable risk of harm to others" as a result. *See Quigley*, 2011 WL 5519839, at *2–3; *see also*

9

*Seeman v. Locane*, No. CV 10-6597, 2017 WL 4235942, at \*4 (D.N.J. Sept. 25, 2017) (denying summary judgment for defendant on negligent entrustment claim where parties disputed whether a vehicle owner knew or should have known an entrustee driver was incompetent to operate the vehicle due to intoxication). *Cf. Herrera v. Murphy*, No. CV 17-4293 (SRC), 2020 WL 6739492, at \*3 (D.N.J. Nov. 17, 2020) (granting summary judgment for defendant on negligent entrustment claim where plaintiff proffered "*no evidence*" "that [the driver] had a history of motor vehicle violations, such that a jury could arguably conclude that [the vehicle owner] knew or should have known [the driver] was incompetent to operate a motor vehicle" (emphasis added)). As such, Fastenal's motion for partial summary judgment as to negligent entrustment (Count Three) is denied.

### 2. Punitive Damages

Fastenal likewise moves for summary judgment as to Plaintiff's punitive damages claims. ECF No. 65. "To support a claim for punitive damages [under the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, *et seq.* ("NJPDA")], a plaintiff must prove by clear and convincing evidence that the harm suffered resulted from the defendant's acts or omissions, which were committed either with actual malice or a wanton and willful disregard of foreseeable victims." *Seeman*, 2017 WL 4235942, at \*4 (citing N.J.S.A. 2A: 15-5.12). "To establish 'wanton and willful disregard,' Plaintiff must show that the . . . Defendants committed 'a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences.'" *Id.* (quoting *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 370 (D.N.J. 2013), *as amended,* 2013 WL 12152481 (D.N.J. Oct. 16, 2013)). A plaintiff's "burden of proof may not be satisfied by proof of any degree of negligence including gross negligence." N.J.S.A. 2A:15-5.12.a. Further, "[t]he application of punitive damages . . . is strict[] and is

10

limited to exceptional cases." *Marte v. Ltd. Brands*, No. CIV.A. 13-139 FSH, 2014 WL 1092503, at *4 (D.N.J. Mar. 18, 2014) (internal quotation omitted).

Factors to consider in assessing whether punitive damages may be awarded include, but are not limited to, "(1) [t]he likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) [t]he defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) [t]he conduct of the defendant upon learning that its initial conduct would likely cause harm; and (4) [t]he duration of the conduct or any concealment of it by the defendant." N.J.S.A. 2A:15-5.12.b.

Fastenal argues that there is no genuine dispute as to material fact regarding Plaintiff's punitive damages claim and when the evidence is viewed in the light most favorable to Plaintiff, as it must be on a defendant's motion for summary judgment, it is insufficient as a matter of law to show conduct that supports a punitive damages award. ECF No. 65-3 at 6. The Court agrees. Even if Plaintiff's assertions regarding Fastenal and McGavitt's conduct are resolved in its favor, such conduct is still insufficient, as a matter of law, to warrant punitive damages under the strict standard set forth in the NJPDA.

The Court first considers Fastenal's vicarious liability for punitive damages based on McGavitt's direct conduct in the scope of his employment. In support of his punitive damages claim, Plaintiff cites McGavitt purportedly traveling above the speed limit in a construction zone and a distraction incurred from an incoming call to McGavitt's cell phone. Pl. Opp. at 2. Though McGavitt denies his speed and whether the events occurred in a construction zone, any purported disagreement around McGavitt's driving conduct cannot constitute a disputed material fact because, when viewed in light most favorable to Plaintiff, such conduct was not undertaken

with "actual malice or a wanton and willful disregard of foreseeable victims," as required under the NJPDA. *Seeman*, 2017 WL 4235942, at *4 (citing N.J.S.A. 2A: 15-5.12).

Plaintiff also cites McGavitt's drug test following the accident that shows a positive result for an unspecified amphetamine. However, Plaintiff fails to provide evidence that the amphetamine was not a medication, as Defendant states (*see* ECF No. 66-5 at 4), or that indicates McGavitt was impaired by the medication and that any impairment caused the accident. *See* N.J.S.A. 2A:15-5.12.b; *Pancrazio v. Greyhound Lines, Inc.*, No. CV 06-3153, 2008 WL 11509793, at *3 (D.N.J. Apr. 25, 2008) ("In the absence of evidence of causation between the condition . . . and plaintiff's accident, plaintiff's . . . argument is irrelevant."). Indeed, a New Jersey State Trooper prepared a Crash Investigation Report that makes no mention of impairment or suspected drug usage and indicates that McGavitt was not given an "Alcohol Drug Test." ECF No. 71-10.

In any event, "[t]he fact that a driver who caused an accident was intoxicated is not by itself sufficient to support a claim of punitive damages against that driver." *Ricca v. Cravello*, No. A-1949-08T3, 2010 WL 596977, at *3 (N.J. Super. Ct. App. Div. Feb. 22, 2010) (citing *Dong v. Alape*, 361 N.J. Super. 106, 118 (App. Div. 2003)). Instead, there must be sufficient additional aggravating factors "to establish that the person has acted deliberately, 'with knowledge of a high degree of probability of harm and reckless indifference to the consequences of his conduct.'" *Id.* (quoting *Dong*, 361 N.J. Super. at 121). Mr. McGavitt's purported traffic infractions are insufficient aggravating factors. *See id.* at *4 ("[C]ommon traffic violations when combined with intoxication will not support a claim for punitive damages."). Accordingly, without more, Plaintiff cannot be considered to have presented evidence as to establish a genuine dispute of material fact to defeat summary judgment under the NJPDA's strict standard.

The same is true for Fastenal's direct liability for its conduct in its hiring and employment of McGavitt. Plaintiff appears to maintain that a genuine dispute of material fact exists as to whether Fastenal performed a sufficient "background and credentials check especially [regarding] McGavitt's drug use." Pl. Resp. SMF ¶ 18. Plaintiff supports this contention by claiming that Fastenal "knew or should have known that Mr. McGavitt was taking amphetamines while driving" and that it continued to employ McGavitt despite him taking unprescribed drugs which disqualified him from driving. Pl. Opp. at 12.

Plaintiff's argument is unavailing under the strict standard for punitive damages. First, Plaintiff does not dispute that McGavitt was hired through the ordinary course of Fastenal's hiring process (FSMF ¶¶ 6–9; Pl. Resp. SMF ¶¶ 6–9), yet Plaintiff does not explain how the hiring process was so deficient that it constituted the "egregious conduct" required for punitive damages liability.[7] *See Pancrazio*, 2008 WL 11509793, at *5. Further, as explained above, McGavitt's amphetamine usage, and thus the relevance of Fastenal's potential knowledge of that usage, cannot be considered a material fact for a punitive damages claim under the facts of this case absent at least *some* evidence that driving under its influence had a high degree of probability of harm. *Id.* ("Pursuant to the punitive damage statute this Court is bound to consider the likelihood that serious harm would result from defendants' conduct." (citing N.J.S.A. 2A:15-5.12.b)). Therefore, the mere fact that McGavitt tested positive for amphetamine usage, without more evidence presented, for example, as to dosage, the purpose of McGavitt taking the medication, and the drug's effects on McGavitt's driving, does not support a claim for punitive damages against Fastenal for his hiring and continued employment.

---

[7] Plaintiff, in support of his disputed adequacy of Fastenal's hiring process, cites solely to "Attachment. 'B'" which is a Penske Truck Collision Repair Order (ECF No. 71-6 at 2). It is unclear to the Court how that repair order supports Plaintiff's assertion.

In short, Plaintiff proffers insufficient evidence to establish a genuine dispute of material fact to withstand summary judgment as to Fastenal's liability, both vicariously and directly, under the NJPDA.  *See Armano v. Martin*, 157 F. Supp. 3d 392, 400 (D.N.J. 2016), *aff'd,* 703 F. App'x 111 (3d Cir. 2017) ("[T]o withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.").  Therefore, Fastenal's motion for partial summary judgment as to punitive damages (Count Four) is granted. [8]

## V.   CONCLUSION

For the reasons stated above, Fastenal's motion for partial summary judgment (ECF No. 65) is granted in part and denied in part, McGavitt's motion to dismiss (ECF No. 66) is granted, and Plaintiff's motion for partial summary judgment (ECF No. 67) is denied.  An appropriate Order accompanies this Opinion.

**DATED**: December 20, 2023

*s/Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

---

[8] Because it was necessary to resolve McGavitt's direct liability for punitive damages to adjudicate Fastenal's motion for summary judgment as to its vicarious liability and having found that punitive damages are not appropriate in this case, McGavitt's motion to dismiss Plaintiff's punitive damages claim, construed as a motion for the judgment on the pleadings, is necessarily granted.